Good morning. I represent the customers of the utility defendants in this case, Duke Energy Florida and Florida Power and Light. Those customers include individuals such as all customers. That means small businesses, very big businesses, the whole range. This action was brought to recover $2 billion that was transferred from the customers to the utilities under Florida's nuclear cost recovery law. Now the purpose of that law was to promote to build a nuclear power plant. That purpose is not a legitimate purpose. So what we have here is the state of Florida and the Florida Public Service Commission using its power to transfer wealth from one group of private parties to another without any legitimate public purpose. Isn't the effect of your complaint a collateral attack on the Public Service Commission's setting of the rate and the Supreme Court of Florida, which had jurisdiction to review farm incident effect? No, it is not. Why isn't it a collateral attack? It is not a collateral attack because the customers never had a right to raise constitutional issues before the Public Service Commission. They could have raised them in the Supreme Court of Florida. And they can, but they have to do so without benefit of any evidentiary hearing to support those claims. We raised both preemption and the Adornment Commerce Clause, which does involve facts. It still is, in effect, a collateral attack, is it not? No, because that is not an effective remedy. It would undo the tax. No it wouldn't. Excuse me, the rate increase. No, it wouldn't because the Florida Public Service Commission has the right to issue refunds and refunds. And they could go to the Florida Public Service Commission and get a refund. No, because the refund returns money to current and future customers, not the customers from whom this amount was collected. This has been collected over ten years. The appropriate remedy is the restitution. So your argument is that it is not a collateral attack because they could not have been before the Supreme Court of Florida and raised the constitutional issue. Is that your argument? No, because they could not get relief that is adequate as they can in this proceeding. If they had convinced the Florida Supreme Court that this rate increase was unconstitutional, they would have had full relief, would they not? No, because the utilities would still have their money. No, no, no. The utilities went to the Florida Public Service Commission. All of the rate payers had standing to appear before the commission and complain about the rate increase. We will start there. Yes. I will assume for sake of discussion that the commission could not decide a federal constitutional question and make it binding, but they could entertain the argument. Yes. Then it goes to the Supreme Court of Florida and the rate payers could have appeared before the Supreme Court of Florida and raised the constitutional question. And had they prevailed, they would not have paid the rate increase. Do you agree with that? No. I mean, I do not know what period of time you are talking about. I am talking about when they went before the commission to get the rate increase in the first instance. The rate payers under Florida law had the power to appear before the commission and argue that it was invalid. It was invalid because they did not need to prove in order to get a rate increase that they could have gotten power from some other source. Okay. Well, I think the confusion is the term collateral attack. Just a minute. And so they could have appeared before the Supreme Court of Florida and raised the very question you raised here. And they would have paid no rate increase if they prevailed. I would like to answer that. Possibly with the preemption claim, because it is not as fact-dependent, they could have. But the Dormant Commerce Clause claim involves facts, and it involves facts in particular if you have to look at whether or not this law unduly burdens interstate commerce. The Florida Public Service Commission couldn't hold a factual hearing on a constitutional issue. So it would have arrived at the Supreme Court in a truncated form. So could they have addressed a partial version of this constitutional challenge? They could have. But suppose they had, and suppose they had won. The only remedy is not to recover any prior amounts that have been collected. It is to allow future ratepayers to get some sort of refund. Can I switch issues on you for a second? You say in your initial brief that with regards to the state law unjust enrichment claim, the district court erred by not looking at whether or not it was really an arising under claim under Grable and Sons, right? Right. Was that theory presented to the district court? Yes, it was. I mean, what happened in the district court is that- You didn't worry about supplemental jurisdiction because alternatively you had an arising under claim? We did the second. The second. Okay. But let me explain how it arose procedurally. Florida Power & Light did not move to dismiss for lack of subject matter jurisdiction. Duke did move to dismiss for lack of subject matter jurisdiction, arguing solely that there was no supplemental jurisdiction. We answered that, but we also have a two-page argument that this case presents federal questions which give the court jurisdiction and in a footnote, we specifically cite Grable. Actually, we cite Grable in a couple of places, but this one argument, which was in our response to Duke, is a couple pages long, and it focuses mostly on the cases that Grable relied on in reaching that result. Now, the argument is that we have raised substantial federal questions and therefore, there's federal question jurisdiction, and it applied to all of the claims, and in fact, we later argued that 1331 does indeed apply to all of the claims. Right. No, I understand the argument. I just wanted to make sure it had been raised below. Well, it was raised below, but since they never really attacked federal question jurisdiction over anything, it was done in this general. We have federal question jurisdiction because there are substantial federal issues. All right. Now, one more tangent on the arising under issue. In part of your brief, you say, or at least I think you say, that federal jurisdiction was proper because some, not all, of your preemption claims could be asserted as defenses in claims brought by the utilities. Am I right? Right. Then that means you lose on those claims because you cannot be in federal court as a plaintiff asserting a normal preemption defense that you would assert as a defendant to a state law cause of action brought by a different plaintiff, right? In other words, you need the type of utter, complete preemption like ERISA to get you into federal court. If all you have is ordinary run-of-the-mill preemption, that does not get you into federal court as a plaintiff, right? Okay. Yeah, I see what you're asking about. The answer to that is that the preemption claim, the claim that the Atomic Energy Act preempts Florida's law is a claim of total preemption. In other words, Florida has no business promoting nuclear power. If that's the argument, I understand it. Okay. But you say in your brief a couple of times that your preemption claim is valid because it could be raised as a defense to a claim brought by the utility. If that's the case, it's not full preemption. It's normal run-of-the-mill preemption. My understanding of the complete preemption doctrine is it's an exception to the usual rule that federal defenses do not give rise to jurisdiction. But we've made that argument. We're making the argument that 1331 gave the court jurisdiction over our Civil Rights Act, which was brought to based on violations of our Commerce Clause rights. We have 1331 jurisdiction over the declaratory judgment action, and that's the only place where this Shaw versus Delta Airlines is the case that recognizes this very narrow exception for cases of complete preemption. And that's the basis for jurisdiction there. And then we have the third basis for jurisdiction, which is the Grable argument. So we were just trying to show, instead of, you know, in the district court we said there are significant federal issues here. There's 1331 jurisdiction of everything. And in the appeal, we break it down into why there's jurisdiction of the Civil Rights Act claim, why there's jurisdiction of the declaratory judgment request, and why there's jurisdiction of the unjust enrichment claim. Can I ask one more question? Sure. To have a 1983 claim, you need state action of some sort, right? Right. Okay. There are one, maybe two, Supreme Court cases which indicate that when a private entity is drawing the benefits of a state statute, it is not a state actor for 1983 purposes. How do you think that Duke and FPL become state actors here? Well, there are Supreme Court cases holding that private conduct is attributable to the state. And what distinguishes them from the cases where private actors are not found to be acting under color of state law is that the state is not involved in the proceeding that gives rise to the alleged deprivation of rights. For example, in Lugar and Brentwood Academy, two cases where the Supreme Court found that the private actor was a state actor, the state was intimately involved in the proceeding. For example, in Lugar, the private defendant used a state writ of attachment law, which was ultimately found unconstitutional, and that writ of attachment was served by the state marshal. Ms. Klaver, your time is running. You want to save your abrupt bottle time? Yeah, I do, but I think I have to pin this down. Just quickly finish the answer. Okay. So the cases like American Manufacturers Insurance, your case, Carlin and Jackson, are all cases in which the private actor relied on state law, but the state had nothing to do with the proceeding. Here, the state of Florida is intimately involved in every proceeding that transfers this wealth to the utilities. All right. Thank you very much. Okay. Mr. Fagg. Thank you. Please support, Your Honor. Your Honor, just on that last point, states have regulated retail electricity for decades and decades and decades in the Jackson v. Metropolitan Edison case. Mr. Fagg, let me see if I have the problem at heart here. The grievance is that when the power companies went before the Commission to get the rate increase, they did not have to prove, in effect, for example, by putting out bids for power, that the needed capacity could be obtained elsewhere. That's what I understand. One of the objections to be that's the classic sort of need for power that the Supreme Court of Mississippi has? Yeah. If the statute had said that the Commission could entertain rate increases for the capital improvement by the utilities, provided there was no available power elsewhere from Georgia or North Carolina or somewhere that could be wheeled in, the statute is fine. The problem I want to be clear about on the last part of your question, Your Honor, with respect to... What I'm saying is, as I perceive their grievance, the effect on interstate commerce is the power company doesn't have to... The Commission doesn't have to consider whether they could get the power wheeled in from elsewhere to satisfy the need so they wouldn't have to build the nuclear facility. Elsewhere or internally, but that's the nature of retail power, Your Honor. Wholesale power is part of the grid. I understand that, but I mean, that's the basic grievance. Well, I understand that's one and the timing. I mean, there's a couple of aspects of this law that are objected to, but they all relate to the economics of the plant. I don't understand. What's the problem with the timing? That the rates are allowed to be recovered before the plant goes into service. That they got rates before they went before the Commission? No, they got rates before the plant was up and running. I understand. I understand that. But all of that, all of that, the policy judgment... That's part of typical rate making by the Commission. I couldn't agree more, Your Honor. All of this is part of typical rate making. All of this is part of what the Supreme Court looked at in the Pacific Gas and Electric case and said, this is what states have been doing since time immemorial. And again, the Arkansas Electric Co-op case, talk about it as part of the very fabric of our nation. I understand. The distinction between retail and wholesale power, and I think that's a critical distinction that's fatal to all of the... The only interstate aspect of it, as I understand it, is that the Commission did not have to take into account, because the power companies didn't have to demonstrate, the ability to get, whether they could get the capacity elsewhere, from other states. That is exactly the same sort of interconnected... I agree that's the allegation. That's the same sort of... I mean, that's the only nexus there is, as I see it. That's what comes closest. I wouldn't concede it's a nexus. That's their argument. But look at the Arkansas Electric Co-op case by the Supreme Court, where it talks about just that sort of potential nexus and held there to be no commerce clause violation in a closer case than this one, because that involved wholesale power that happened to be truly intrastate. So yes, Your Honor, I agree that's the allegation, but I also, in the same breath, need to emphasize that's a legally deficient allegation under Supreme Court precedent. So again, the... I'm back to my problem with the collateral attack, but that's a federalism issue. Well, the one point I would add to that colloquy, Your Honor, is... I can't believe that the Supreme Court of Florida could not have entertained this whole argument before the rate took effect. I think they could have, Your Honor. This law was passed in 2006, and this lawsuit was filed in 2016, okay? So the argument that, well, they couldn't get the money back, well, they waited 10 years. Where were they in 2006? So I agree that there was an opportunity to challenge these rates and ultimately get judicial review of the constitutional challenges by the Florida Supreme Court. And I need to emphasize again that the commerce clause claims do not involve fact issues. Emphatically, they do not involve fact issues. Again, the Arkansas Electric Co-op case talked about the interconnectedness of wholesale markets, which are in interstate commerce, and these Florida statutes do not regulate wholesale power prices. They have nothing to do with wholesale markets. They are retail rates. Retail markets are, as alleged correctly by the plaintiffs, a monopoly in Florida. There's no competition. Inter or intrastate. The commerce clause has no job to do here, as the Supreme Court said in General Motors' brief reasoning. Counsel, you've got three Florida judges here. We understand how the Public Service Commission operates and how the rate setting happens. So again, the two challenges here are commerce clause and preemption. With the commerce clause, we've talked a little bit about it, but I just want to emphasize, besides they're related, but the merits of it, there's no job for the commerce clause to do, but also the prudential standing aspect, which the District Court did rule on and again cannot be overcome in this case. These are in-state plaintiffs. The structure of the retail market does not allow, they can't be customers of a majority utility for retail power. It doesn't work that way, and in all of the cases where in-state plaintiffs have been found to have the requisite prudential standing, they have been either actual or potential customers of out-of-state suppliers. That, by definition, and as alleged by the plaintiffs, can't be the case here. And in those few cases where in-state parties have had the requisite prudential standing, they've either been trying to sell to an out-of-state party, trying to buy to an out-of-state party, or suffering the burden of a penalty imposed on an out-of-state party, and the City of Los Angeles v. Kern decision in the Ninth Circuit, which we cite in our briefs, lays all that out. These plaintiffs can never satisfy that, and again, that's another reason why the dismissal with prejudice was appropriate and can never be cured, no matter who they sue or what the nature of the amended allegations would be. Just briefly on the preemption, you cannot get past, I would respectfully submit, Pacific Gas and Electric. You know, it goes on and on talking about the respective roles between the Atomic Energy Act and the traditional role of the states. This is rate-making. It may not be rate-making these plaintiffs like, but it is rate-making at its core, and the Supreme Court has said in no uncertain terms that that is permissible. Why do you think that, for purposes of 1983, your client Duke and FPL are not state actors? Because there's several reasons. They are not acting as an instrumentality of the state, like the example of where they're going out and executing writs on behalf of a government agency. The regulated utilities… In Lugar, they're not instrumentality, they're using state mechanisms. In Lugar, the state wasn't involved in trying to get the property. It was facilitating the getting of the property by a private party. But the connection there and the involvement, I would respectfully submit, of the state was of an order of magnitude different than what happens in dozens and dozens and dozens of states, which is a permission required to charge rates for retail electricity. And the second piece of that is it's voluntary. How different is that in theory than what happened in Lugar? In Lugar, it was just a use of force, but you had to go to the state authorities to get the writ of attachment, or whatever writ it was, and then use a sheriff's office to then execute the writ. Here you're using milder means. You're going to the government agency, you're trying to get the approval for the rate increase through a PSC order, and then you're going to the Florida Supreme Court to get that validated, and the Florida Supreme Court says, go ahead, it's good. I would respectfully disagree with the characterization, Your Honor. Here what's happening is Duke wants to charge for the product it produces, it wants to charge its prices, but the state makes it get permission to do that. In Lugar, they wanted to go and do something that they wouldn't have otherwise been allowed to do. So it's an affirmative versus a negative involvement, I would submit. But Duke only gets to, you said it's a monopoly, so Duke only gets to do what it does because of state approval. Correct. And it doesn't, like a lot of companies, get to charge whatever it wants for electricity. So again, and you go back to the Jackson versus Metropolitan Edison. I mean, again, you may not like this rate making, but it's rate making. You're the recipient of allegedly unconstitutional gift. I mean, that's what made you a state actor. I'll put it another way. Say you're the beneficiary of a lawsuit and you got a judgment and the judgment was unconstitutional. I guess it would make you a state actor in a way. The state put its imprimatur on your position. We complied with the state law that's now being challenged. And I think that's about all you can say. I know I want to preserve time, I'm happy to answer further questions. We understand your point. Mr. Singer. Thank you, Your Honor, and may it please the Court. Stuart Singer on behalf of Florida Power and Light Company. I'd like to start by noting that I think the Court is completely correct in characterizing this as a collateral attack on a Public Service Commission determination where the Florida Supreme Court approved it and you had a proceeding where constitutional issues could have been raised and were raised. It was a separation of powers argument, for example, that was raised in those proceedings. And there is no reason, and I believe Appellant essentially admitted to preemption claim, could have been raised. Oh, any kind of claim could be made, as I understand it. And if the Florida Supreme Court said we need factual basis, they appoint a special master to do the facts. Exactly. That's exactly the way the U.S. Supreme Court will deal with fact-finding and the Florida Supreme Court, we believe, has authority to take the procedural steps necessary to deal with a constitutional claim. There's a Supreme Court case that nobody's mentioned which arises in the habeas corpus arena. The name is Heck v. Humphrey, and the principle is this. A defendant is convicted of a crime. Conviction is appealed, affirmed. He files a 1983 action against the sheriff because the sheriff violated his Fourth Amendment rights in seizing some evidence that was used to result in his conviction. So there's a 1983 case, the court has jurisdiction, but the Supreme Court of the United States says no because that would be a collateral attack on his conviction, as long as that we won't interfere. Well, here there is... I mean, that's sort of the approach... You tell me where you come from. I'm just telling you where I come from. And we agree with that in the sense that... There was never a time, in my view, that the ratepayers could not have repaired the Florida law. That's correct. Under Florida law, it challenged the rate at that time. Whether it's another appearance before the public service commissioner, whatever it is. And if they were denied relief because they waited too long, that's their problem. Your Honor, there was a consideration. One constitutional argument was raised, others could have been raised. The Florida Supreme Court approved this, stating that the concerns of the objectors, quote, by the legislature, not this court. Which is really what we're dealing with here. We're dealing with a policy decision that the legislature made as the timing of recovery for nuclear costs. And these individuals disagree with that, but that is ultimately a legislative decision and it's a state decision, as the court made clear in Pacific Gas and Electric, that the state's role is with respect to rate making and generation of power, and the federal role is simply with radiological safety. And the Supreme Court specifically said that Congress has preserved in the Atomic Energy Act the state's traditional authority over the need for additional generating capacity, which would include nuclear capacity, the type of facilities to be licensed, and rate making. And that's what we have here. And think about the consequences, Your Honor, if one had the opposite decision. It would mean that virtually every nuclear plant in this country would be unconstitutional. But if FB&L wanted to build a new coal-fired plant, they could go to the, as I understand Florida law, they could go to the Public Service Commission and present a case for an increased rate to aid in the capital investment of the coal-fired plant. Yes, or they could build the plant and include it in the rate case. Before the plant came online, is what I'm trying to say. Under certain circumstances, that would be the approach to be taken. I understand that the Commission would have the power to do that. Yes, they would. And the point is here that it would create havoc throughout the country if all of a sudden you said any state support through rate making approvals for nuclear power is preempted. That can't be right, and it isn't. Similarly, under the Commerce Clause, you would be saying any approval of a rate for cost recovery by a state, by a regulated state. My problem is what's the difference between nuclear power and coal-fired power? I don't think there is a difference. The state has authority over the economic decisions for both. That was the point of Pacific Gas and Electric. And similarly, under the Commerce Clause, think about the implications of the plaintiff's position there. You would basically be saying that every state has to, instead of running as a regulated entity, would have to make its regulatory decisions in a way that were inconsistent with being a regulated monopoly, where you have to look at the effects on consumers with not going out of state to get competition. That has never been the law, and as Mr. Faggs indicated, the Arkansas Electric case said that's not true. And I'd like to address Judge Jordan's questions regarding Lugar, because I think there is a distinction between a defendant who takes it upon himself to act like a sheriff, to execute a writ of attachment, which is a traditional state role, and a role that is a private role of receiving the benefits of a state decision, just like if someone gets the benefits of a state statute and it's challenged in court and allegedly is unconstitutional, does it mean that all the thousands, perhaps millions of beneficiaries are defendants in a lawsuit? I think not. It's a suit that is brought against the state. And similarly, Lugar was dealing when you act like the state, not when you're a private party receiving state benefits. And the approach which the plaintiffs would take in not naming the state and naming private citizens entities here, like utilities, as defendants, would create havoc. It would mean these constitutional issues are not decided in litigation with the state, but could be brought against any number of private parties. So there are multiple grounds that support the decision below. As a matter of law, it is not a preemption case under Pacific Gas and Electric. As a matter of law, it's not a Commerce Clause violation under Arkansas Electric. As a matter of law, under Lugar, you don't have state action. So we think on all of those grounds, the federal actions were properly dismissed. That leads to a state unjust enrichment claim, which the court, I think, properly dismissed for two reasons. One, it depends on the federal claims. If the federal claims disappear, then that falls too. One of the arguments made, at least on appeal, is that the unjust enrichment claim was essentially an arising underclaim under federal law and should have been treated as such. Well, it may be such. If one ignores the argument, they also made that this is a defense, which I think was asked about, which would be inconsistent with that interpretation of Grable. But even if one gave them federal jurisdiction, they'd lose the unjust enrichment case because its substantive basis is preemption and commerce clause. Right. All the things you've mentioned before. Right. So it doesn't have any independent significance once you get by the federal claims. It would provide, if that theory was valid, it would provide federal jurisdiction. But then your argument is they lose on the merits. Exactly. First, I would like to address the Dormant Commerce Clause. Part of this case, that issue, the merits of it, did this law discriminate against interstate commerce was not reached by the district court and it's not part of this appeal. And I mentioned that because a great deal of time has been devoted to it. The only substantive issue here is the preemption argument. At one point, the court asked, what's the difference between nuclear and coal? The answer is very simple. It's the Atomic Energy Act. There is no comparable federal regulation of coal. And there's no statement by the federal government that the development of coal has to be balanced against national security and radiological safety and health. So that is the difference. I didn't mean for that purpose. What's the difference between coal and nuclear power as far as the Public Service Commission is concerned in looking at rate bases? Well, that is the difference because the state cannot use the retail. What they're doing here is this is a financing mechanism. This is not rate regulation. It's voluntary. Its sole purpose is to provide financing for new nuclear power plants and to protect the nuclear industry from financial risk. And the way you can tell it's not part of regular rate making is, first of all, it's voluntary. And second of all, the rate payers got nothing in return. You've focused on the fact that this case is coming up after this law has been running for 10 years. I mean, that often happens, for example, in antitrust cases. You get the people, a group of people who are the most recent victims of it. But one of the biggest reasons for that is for the first many years, these projects were all going ahead and had the facts turned out that all these plants were built, this would be a very, very different case. This case arose because these plants were abandoned. No, but you're under the law, they get to keep the money and charge more. I'm sorry, but that's not quite correct. Because if your theory is that this is preempt, that might affect your unjust enrichment claim. But if your argument is that it's preempted, it doesn't matter whether or not the plants were built, right? It matters to injury. No, if your argument on preemption is that Florida had no business whatsoever enacting this law, then you win. Even if they had built the plant, you win. I agree that this could be challenged on preemption grounds at any time. You're challenging it. However, the injury that prompted the case did not occur. You are challenging it on preemption grounds, are you not? Yes, we are. And if you win on that claim, that means that Florida had no business enacting the statute. And even if the power plants were ultimately built, you would still win. Is that not correct? Yes, that is. But the whole standing injury issue would have been different. Why? It's real clear now with nothing built. And also the fact that there is no public benefit. Even if they were built, even if they were built, your argument, maybe not for unjust enrichment purposes, but on preemption grounds, you'd still have a valid claim if your theory is right. Am I missing something? No, but the abandonment directly affects the question. It gives you more damages. Well, it gives us clear damages. I mean, it's a very unjust enrichment. If you get something in return, that's a very different case. It might not have been an economically viable case without that, but you still have a valid federal claim if your theory about preemption is correct. Well, I think we've covered this ground. I still think that is historically and factually why the case arose when it did. It's because of the abandonments. And it goes to the question of both injury and standing. How do you enforce a judgment against the state of Florida under this law if you haven't sued any state officials? Well, we don't need to. They don't hold the money. It's the utilities. You're arguing that the law is preempted. Correct. If the state of Florida is not an entity in this case, either as an intervener or as an amicus, as a party or anything else, how do you enforce that judgment against the state of Florida going forward? Well, the answer is that's not really the goal of this case. So they can apply the law to another utility in the future? I think it's unlikely that they would go on using the law if there were such a judgment. But yes, if you don't sue them, you don't get an order against them. But the relief that's needed has to come from the utilities because it's the utilities that hold the money. I would like to address some other points if you just — You have to bring your argument to a close. Yes. Pacific Gas and Electric does not preclude other kinds of preemption. And that's clear in the language. We quote it in the brief. In Lugar, you describe Florida's involvement as benign. It is much more extensive and much more injurious, although there's no physical component of serving a writ on some other party. So in conclusion, I would just like you to keep in mind what's really going on here, which is this transfer of wealth from one private group to another private group with no public benefit or no legitimate public benefit because it's not under — I understand the point. The state cannot promote nuclear power. Thank you very much. Thank you. Geico versus Mercer.